**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Kevin McKenzie,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 25 C 1777** |
| v. | ) | |
| | ) | **Judge Jorge L. Alonso** |
| **Ataraxia, LLC, Verano Illinois, LLC,** | ) | |
| **Verano Holdings, LLC, Verano Holdings** | ) | |
| **USA Corp., and Verano Holding Corp.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>Memorandum Opinion and Order</u>**

Plaintiff, Kevin McKenzie, brings this putative class action against a group of related business entities that collectively market and sell a range of cannabis products, including vape cartridges. Having purchased one such cartridge, Plaintiff claims that the defendants misclassified it and like products under the Illinois Cannabis Regulation and Tax Act ("CRTA"), 410 ILCS 705/1-1 *et seq*., misleading him and other customers about their safety and legality. Plaintiff asserts claims of statutory and common-law fraud, breach of express and implied warranty, and unjust enrichment. The defendants have moved to dismiss. For the following reasons, the motion to dismiss is granted.

## I. Background

In 2019, Illinois passed the CRTA, which legalized the possession and use of cannabis for recreational purposes under certain conditions. Defendants, Ataraxia, LLC, Verano Illinois, LLC, Verano Holdings, LLC, Verano Holdings USA Corp., and Verano Holding Corp., sell cannabis products in Illinois and other states. They allegedly operate as a single enterprise, in a peculiar structure necessitated by the complexity of cannabis regulation. It remains illegal to manufacture

or distribute cannabis products under the Controlled Substances Act ("CSA"), *see* 21 U.S.C. § 812 Schedule I(c)(17), *id.* § 841(a), the CRTA and other such state statutes notwithstanding.

In August 2024, at a dispensary in Rockford, Illinois, Plaintiff purchased a 1-gram "Essence Distillate Strawberry Cough" cannabis oil vaporizer cartridge (hereafter, "vape cartridge"), which was manufactured by Defendants. (Compl. ¶ 115, Dkt. No. 1-1.) Such cartridges are generally used with a "vape pen," which contains a "battery [that] heats up an atomizer in the cartridge[,] which in turn heats up and activates the various compounds in the cannabis oil." (Compl. ¶ 45.) This process vaporizes the oil, which the user then inhales.

There are two relevant categories of cannabis products under the CRTA: "cannabis concentrate" and "cannabis-infused product." 410 ILCS 705/1-10. A "cannabis concentrate" is "a product derived from cannabis that is produced by extracting cannabinoids, including tetrahydrocannabinol (THC), from the plant through the use of . . . water, ice, or dry ice; or butane, propane, CO2, ethanol, or isopropanol and with the intended use of smoking or making a cannabis-infused product." *Id.* A "cannabis-infused product" ("CIP") is "a beverage, food, oil, ointment, tincture, topical formulation, or another product containing cannabis or cannabis concentrate that is not intended to be smoked." *Id.* "Smoking" is "the inhalation of smoke caused by the combustion of cannabis." *Id.* The statute limits possession to "no more than 500 milligrams of THC contained in cannabis-infused product[s]," *id.* § 10-10(a)(2), or "5 grams of cannabis concentrate," *id.* § 10-10(a)(3).

The CRTA prescribes certain warnings that must be included on cannabis product labels. Smokable product labels must "contain a statement that 'Smoking is hazardous to your health.'" *Id.* § 705/55-21(j)(1). CIP labels must warn as follows: "CAUTION: This product contains cannabis, and intoxication following use may be delayed 2 or more hours. This product was

produced in a facility that cultivates cannabis, and that may also process common food allergens." *Id.* § 55-21(j)(2). The labels on Defendants' vape cartridges contain the "Smoking is hazardous to your health" statement, and they contain a general warning prescribed for all cannabis products, *see id.* § 55-21(i), which begins with "This product contains cannabis," but they do not otherwise contain the warning prescribed by section 55-21(j)(2).

Plaintiff claims that Defendants are trying to pass off vape cartridges and similar products, which he refers to generally as "vapable oils," as smokable "concentrates," which are not subject to the 500-milligram limit on THC that applies to CIPs. In fact, according to Plaintiff's theory, vapable oils are properly classified as CIPs because they are not "intended to be smoked." They are heated with a battery and vaporized, and, because "combustion" forms no part of the process, Plaintiff contends, the inhalation of the resulting vapor does not qualify as "smoking" under the CRTA, *id.* § 1-10.

Plaintiff's complaint contains seven counts: Count I, for violation of the Illinois Uniform Deceptive Trade Practices Act ("IUDPTA"), 815 ILCS 510/1, *et seq.*; Count II, for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*; Count III, for common law fraud; Count IV, for fraudulent concealment; Count V, for breach of express warranty; Count VI, for breach of implied warranty; and Count VII, in the alternative, for unjust enrichment. Plaintiff states in response to the present motion that he does not oppose dismissal of Count I, so the IUDPTA claim is dismissed.

## II.    Legal Standards

"A motion under [Federal] Rule [of Civil Procedure] 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). A complaint must include "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Under this standard, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

Any claims of or including acts of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires the pleading party to "state with particularity the circumstances constituting fraud." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 775 (7th Cir. 2016). Describing the circumstances with particularity may require including such information as "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). In other words, Rule 9(b) "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted); *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011).

## III.    Analysis

Defendants make numerous arguments in support of dismissal, most of which the Court need not reach. Two of these deserve a brief comment due to their breadth and importance, before the Court moves on to the issues that dispose of the present motion.

First, Defendants argue that Plaintiff has no standing to assert claims on behalf of class members who purchased products that he did not purchase himself. The Court does not read Plaintiff's complaint to assert any such claims, *per se*; he asserts his own claim for purchasing a particular vape cartridge, and he putatively represents a class of Defendants' customers who similarly purchased products that he contends are CIPs sold as if they were concentrates. There is no point in addressing now which purchases Plaintiff can litigate besides his own, if any, when, as the Court will explain further below, he has not stated a claim as to his own purchase. Therefore, the Court leaves for another day the issue of which claims based on which products he can assert on behalf of the putative class.[1]

Second, Defendants argue that Plaintiff's claims are fundamentally flawed because vapable oils are correctly—not erroneously—classified as cannabis concentrates under the CRTA. Assessing this argument would require interpreting the CRTA without the guidance of precedential authority, which this Court is reluctant to do. "A federal court sitting in diversity must proceed with caution in making pronouncements about state law, especially given that such pronouncements inherently involve a significant intrusion on the prerogative of the state courts to control that development." *REXA, Inc. v. Chester*, 42 F.4th 652, 668 (7th Cir. 2022) (cleaned up). Because the Court finds "dismissal warranted and more appropriate on other grounds," it need not deprive state courts of the opportunity to take the first crack at this issue. *McKenzie v. Progressive Treatment Sols., LLC*, No. 25 CV 1768, 2026 WL 636741, at *6 (N.D. Ill. Mar. 6, 2026); *see also*

---

[1] Although the Court has addressed this issue at the pleading stage in certain cases where the circumstances seemed to warrant it, *see, e.g.*, *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *6 (N.D. Ill. Aug. 18, 2017), the issue is typically better left for the class certification stage. *See Daly v. Glanbia Performance Nutrition, Inc.*, No. 23 C 933, 2023 WL 5647232, at *5 (N.D. Ill. Aug. 31, 2023).

*Rodriguez v. Progressive Treatment Sols., LLC*, No. 25-CV-1019, 2026 WL 710930, at \*5-6 (N.D. Ill. Mar. 13, 2026) (citing *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 863 (7th Cir. 2020) ("We do not forget that state courts are the ultimate expositors of their own laws." (cleaned up))).

### A. Fraud and Misrepresentations of Law Versus Misrepresentations of Fact

Defendants argue that Plaintiff's fraud claims must be dismissed because his theory of fraud depends on a mistake of law, not a misrepresentation of fact.

> It is understood that misrepresentations or mistakes of law cannot form the basis of a claim for fraud. An erroneous conclusion of the legal effect of known facts constitutes a mistake of law and not of fact. . . . Where a misrepresentation of law is discoverable by the plaintiff in the exercise of ordinary prudence, it cannot form the basis of an action for fraud.

*McIntosh v. Walgreens Boots All., Inc.*, 135 N.E.3d 73, 84-85 (Ill. 2019) (internal citations omitted). Plaintiff does not allege that Defendants factually misrepresented any particular qualities or characteristics of their products. He claims that they sold them in amounts of THC that were only permissible if they were concentrates and with a warning prescribed for concentrates, rather than the one prescribed for CIPs. But this describes nothing more than "[a]n erroneous conclusion of the legal effect of known facts," *id.*, namely, an (arguably) erroneous conclusion as to whether to classify the vape cartridge at issue as a smokable concentrate or a non-smokable CIP. And Plaintiff does not allege that he was unable to discover the misrepresentation in the exercise of ordinary prudence; to the contrary, he alleges that he knew the products in question were "vapes" (Compl. ¶¶ 5, 90) and how they worked (*id.* ¶¶ 92-95). Therefore, any mistake was one of law, not fact. *See McKenzie*, 2026 WL 636741, at \*7 (reaching same conclusion, in a similar case brought by Plaintiff against a different cannabis enterprise); *Patterson v. Green Growth Group, Inc.*, No. 25-CV-8766, 2026 WL 735188, at \*6 (N.D. Ill. Mar. 16, 2026); *Rodriguez*, 2026 WL 710930, at

6

*10; *Rodriguez v. Cresco Labs, Inc.*, No. 25 C 633, 2025 WL 3215872, at *5 (N.D. Ill. Nov. 18, 2025).

In response, Plaintiff argues that he could not actually have discovered the misrepresentation in the exercise of ordinary prudence because Defendants' intent is known only to themselves, and intent is a critical fact in distinguishing between CIPs and cannabis concentrates. The Court is not convinced. True, the categories are defined in terms of whether the products have the "intended use of smoking" or are "not intended to be smoked." 410 ILCS 705/1-10. But intent only factors into the relevant statutory definitions with reference to how the products are "intended" to be used, and there was never any uncertainty or deception as to how Defendants' vapable oils were to be used—as Plaintiff's own allegations amply demonstrate. *See McKenzie*, 2026 WL 636741, at *7; *Turek v. Revolution Global, LLC*, No. 25-CV-01842, 2026 WL 710946, at *7 (N.D. Ill. Mar. 13, 2026). The issue turns on whether vaping qualifies as smoking, for purposes of the CRTA, and if there was any mistake about that, it was a mistake of law, not a mistake of fact. Therefore, Plaintiff fails to state a claim in any of Counts II, III, and IV.

### B. Breach of Warranty and Privity

Under Illinois law, "express and implied warranty claims require privity of contract between the plaintiff and the defendant." *Turek*, 2026 WL 710946, at *5; *see Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1121-25 (N.D. Ill. 2019) (citing *Collins Co. v. Carboline Co.*, 532 N.E.2d 834, 841 (Ill. 1988), and *Szajna v. Gen. Motors Corp.*, 503 N.E.2d 760, 767 (Ill. 1986)). Plaintiff purchased Defendants' vape cartridge not from Defendants directly but from a third-party retail dispensary. He is, therefore, not in privity with Defendants *See Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1056 (N.D. Ill. 2022) ("There is no contractual privity between a manufacturer and a person who buys from an independent dealer."). And he can assert

7

breach-of-warranty claims against them only if his claims meet an exception. *See id.* Plaintiff argues that he meets two exceptions: the direct-dealing exception and the third-party beneficiary exception. The Court agrees with Defendants that neither exception applies here.

The direct-dealing exception applies only "when there [were] direct dealings between the manufacturer and the remote customer," which means "the ultimate purchaser of the product communicated *directly* with the manufacturer." *Id.* (internal quotation marks omitted). Plaintiff does not cite any direct dealings between himself and Defendants. He mentions marketing and advertising materials, "but those are just the ordinary general communications between manufacturers and consumers, not specific, direct communications with [Plaintiff] when [he] made the purchase." *Miller v. Emerson Elec. Co.*, No. 1:23-CV-03797, 2025 WL 964905, at *5 (N.D. Ill. Mar. 31, 2025); *see Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 976 (N.D. Ill. 2025); *see also Mckenzie*, 2026 WL 636741, at *8-9; *Turek*, 2026 WL 710946, at *8; *Rodriguez*, 2026 WL 710930, at *12. The direct-dealing exception does not apply.

To satisfy the third-party beneficiary exception, Plaintiff must plausibly allege that "'the manufacturer knew the identity, purpose and requirements' of the customer and 'manufactured or delivered the goods specifically to meet those requirements.'" *Redmon v. Whirlpool Corp.*, No. 20 C 6626, 2020 WL 9396529, at *5 (N.D. Ill. Apr. 28, 2020) (quoting *Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. Ct. 1980)). There are "no such allegations here." *Redmon*, 2020 WL 9396529; *see Mckenzie*, 2026 WL 636741, at *8-9; *Turek*, 2026 WL 710946, at *8; *Rodriguez*, 2026 WL 710930, at *12. The goods in question were manufactured for general consumption by retail customers, not for Plaintiff specifically. The third-party-beneficiary exception does not apply, either. Plaintiff's breach of warranty claims in Counts V and VI fail for lack of privity.

### C. Actual Damages

Even if the above-described theories of liability were viable, Plaintiff's claims run into another problem: he does not plausibly allege actual damages. Consumers asserting fraud claims such as Plaintiff's must establish that they paid "'more than the actual value of the property'" they purchased. *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (quoting *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. App. Ct. 2008)); *see Turek*, 2026 WL 710946, at *4 (citing cases). And Plaintiff's breach of warranty claims also require actual damages that can be proved with reasonable certainty, not "'based on conjecture or speculation.'" *Patterson*, 2026 WL 735188, at *7 (quoting *Shoop v. DaimlerChrysler Corp.*, 864 N.E.2d 785, 788 (Ill. App. Ct. 2007)); *see also Turek*, 2026 WL 710946, at *5; *Rodriguez*, 2026 WL 710930, at *7.

Plaintiff's theory of damages is that, because Defendants' products were packaged and labeled in a way that did not comply with the CRTA and that potentially exposed customers to liability for purchasing and possessing them, they were essentially worthless, and he would not have purchased them if he had known the truth. But Plaintiff "fails to provide any facts connecting the absence of warning labels or dosing instructions" or "Defendants' alleged CRTA noncompliance to a reduction in the value of the Vapable Oils he purchased." *Turek*, 2026 WL 710946, at *4. The closest he comes is to cite the risk of criminal prosecution. As an initial matter, any such risk would seem not to apply to Plaintiff, who alleges that he is a "medical use cannabis purchaser." (Compl. ¶ 114.) *See Turek*, 2026 WL 710946, at *4 (citing 410 ILCS 130/7 ("All medical cannabis products purchased by a qualifying patient from a licensed dispensary are lawful.")). Regardless, Plaintiff's suggestion that the risk of criminal prosecution makes the product worthless is based on nothing more than his own "subjective assessment" of the value of the product. *Id.* at *5; *Rodriguez*, 2026 WL 710930, at *7. A risk of criminal liability is always

9

baked into any purchase, possession, or use of cannabis, which remains illegal as a Schedule I controlled substance under federal law. *Patterson*, 2026 WL 735188, at *7 ("Given that Plaintiff already accepted the risk of purchasing something illegal under federal law, it cannot be said that he was damaged by purchasing something that was also potentially illegal under state law.") The allegation that Defendants' alleged packaging and labeling errors made Defendants' products worthless compared to other products Plaintiff might have purchased amounts to a "mere guess[] void of any substantial analysis," which is "insufficient to support a claim." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014); *see Patterson*, 2026 WL 735188, at *7 (citing *Camasta*).

### D. Unjust Enrichment

Finally, Defendants argue that "because [Plaintiff's] unjust enrichment claim is based on the same conduct as he asserts in support of" his other claims, that claim "stands or falls" with the others. *Sabo v. Wellpet, LLC*, 250 F. Supp. 3d 332, 335 (N.D. Ill. 2017) (citing *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)); *see McKenzie*, 2026 WL 636741, at *10 (citing *Pirelli*, 631 F.3d at 447 ("Under Illinois law, unjust enrichment is not a separate cause of action.")). Plaintiff concedes that his unjust enrichment claim is "based on overlapping deceptive conduct by Defendants as . . . in other claims." (Pl.'s Resp. Br. 20, Dkt. No. 38.) "Without any plausible underlying cause of action, Plaintiff's unjust enrichment claim must also be dismissed." *Patterson*, 2026 WL 735188, at *8; *see Rodriguez*, 2026 WL 710930, at *13 (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010)).

The parties raise and discuss other issues, but the foregoing discussion suffices to resolve the present motion. For the reasons set forth above, Plaintiff fails to state a claim, and Defendants' motion to dismiss is granted.

**<u>Conclusion</u>**

Defendants' motion to dismiss [26] is granted for failure to state a claim. The dismissal is without prejudice. Plaintiff may file an amended complaint by 4/24/26.  If he files nothing by the 4/24/26 deadline, the Court will dismiss the case without prejudice, on the assumption that Plaintiff no longer wishes to pursue the matter in this Court.

**SO ORDERED.**                                                    **ENTERED: March 26, 2026**

**HON. JORGE L. ALONSO**
**United States District Judge**

11